Case 4:24-cv-04053   Document 29   Filed on 06/12/25 in TXSD   Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
June 13, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROSA CASTILLO, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 24-4053 |
| | § | |
| PAMELA BONDI, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

The plaintiff, Rosa Castillo, worked for the U.S. Attorney's Office for the Southern District of Texas from June 2020 to October 2022. She began as a Security Assistant doing background investigations for the Human Resources Office and was promoted to Human Resources Assistant. Castillo alleges that in 2017, she was diagnosed with post-traumatic stress disorder, major depressive disorder, and attention-deficit hyperactivity disorder. She alleges that her symptoms significantly worsened during the covid-19 pandemic and that her doctor recommended trauma-focused psychotherapy.

In October 2021, Castillo submitted a Certification of Health Care Provider for Employee's Serious Health Condition (Form WH-380-E) under the Family Medical Leave Act, 29 U.S.C. Chapter 28. Castillo alleges that after she submitted this form, the U.S. Attorney's Office began to discriminate against her by: (1) delaying granting her a reasonable accommodation in the form of FMLA leave; (2) denying her request to use her government laptop while on leave; (3) delaying in processing her within-grade pay increase while she was on leave; (4) denying her request for a reduced workload on her return from leave; (5) failing to help her complete a Voluntary Leave

Transfer Program form after she was put on leave without pay; (6) placing her in absent-without-leave status; and (7) firing her.

Castillo asserts claims for: (1) disability discrimination under Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791, and the Americans with Disabilities Act, 42 U.S.C. § 1201, *et seq.*; (2) retaliation, in violation of the Rehabilitation Act and the ADA; (3) and hostile work environment, in violation of the Rehabilitation Act and the ADA.  (Docket Entry No. 5). The U.S. Attorney's Office has moved to dismiss Castillo's claims under Federal Rule of Civil Procedure 12(b)(6).  (Docket Entry No. 12).

Based on the pleadings, the motion, the briefs, and the applicable law, the court grants the motion to dismiss except the claims based on Castillo's termination from federal service.  The remaining claims are dismissed, with prejudice, because amendment would be futile.  The reasons for these rulings are set out below.

**I.      Background**

In October 2017, Castillo was hired as a contractor by the U.S. Attorney's Office for the Southern District of Texas as a Records Examiner in the Asset Forfeiture Unit. (Docket Entry No. 5 ¶ 9). In June 2020, Castillo was transferred to the Human Resources division to work as a Security Assistant conducting background investigations. (*Id*. ¶ 10).  A year later, the acting Human Resources Officer, Christine Sienkowski, promoted Castillo to the position of Human Resources Assistant.  (*Id.* ¶ 12).

Castillo alleges that she has a history of mental health-related disabilities dating back to 2017. (*Id.* ¶ 21).  Castillo alleges that the covid-19 pandemic made her disabilities worse.  (*Id.* ¶¶ 22-25). In 2021, Castillo's doctor recommended that she attend "trauma-focused psychotherapy," which would have her "spend several hours a day, a few days per week, engaged in individual and

group therapies." (*Id.* ¶ 35). Castillo's doctor recommended that she attend these sessions for up to three days a week, which would require some hours of medical leave. (*Id.* ¶ 36). Castillo alleges that other than providing her a WH-380-E form, the U.S. Attorney's Office Human Resources Department gave her no guidance on receiving leave under the FMLA. (*Id.* ¶ 37).

When Castillo requested medical leave from the U.S. Attorney's Office, deputy administrative officer Jack "Butch" Pascoe asked her to submit a doctor's letter "stating a diagnosis and prognosis." (*Id.* ¶ 41). Castillo complied on October 11, 2021. (*Id.* ¶ 45). Castillo alleges that Pascoe did not properly file her medical documents, (*id.* ¶ 43), told her to communicate with him directly when she needed leave, (*id.* ¶ 48), and, despite reminders from a Human Resources specialist, did not tell her she had to log her leave time through a computer application called WebTA, (*id.* ¶ 50). Castillo alleges that Pascoe delayed granting her FMLA leave until at least January 19, 2022. (*Id.* ¶ 52).

On January 14, 2022, Castillo received her performance review from Pascoe. (*Id.* ¶ 54). Without specifying the rating she received, Castillo states that it was lower than she deserved. (*Id.* ¶ 57). Castillo complained to Pascoe and asked him to change her rating to "outstanding." (*Id.* ¶ 54). Pascoe declined, stating that "he rarely gave employees with less than 3 years on the job outstandings." (*Id.*). Castillo alleges that Pascoe had previously given her an "outstanding" and had also given another employee with less seniority the same rating. (*Id.* ¶¶ 60-61). When Castillo asked what she could do to improve her rating, Pascoe told her that she should try to not miss weekly Human Resources meetings. (*Id.* ¶ 62). Castillo alleges that she had missed these meetings due to migraines caused by her disabilities. (*Id.* ¶ 63).

On January 19, 2022, Castillo again requested guidance on FMLA leave from the Human Resources department. (*Id.* ¶ 66). The following day, Castillo submitted a form WH-380-E with

3

her doctor's recommendation for six to twelve weeks of continuous time off. (*Id.* ¶¶ 67-68). Doriane Lewis, a Human Resources specialist, processed the paperwork. Castillo was put on a reduced workload beginning on January 20, 2022, until her FMLA leave began on February 3, 2022. (*Id.* ¶¶ 74-75).

Castillo was asked to leave her work laptop at the office during her FMLA leave. (*Id.* ¶ 80). Castillo alleges that an IT Specialist told her this was not standard policy. (*Id.* ¶ 83). Lewis initially did not allow Castillo to take a work laptop home at the end of each day, but Castillo was later provided with an "RSA token" that allowed her to access the government network from home. (*Id.* ¶¶ 89, 90). Castillo alleges that due to her deteriorating medical condition, she did not collect the token. (*Id.* ¶ 91).

On March 1, 2022, Castillo called the U.S. Attorney's Office Equal Employment Opportunity Office to discuss submitting a complaint. (*Id.* ¶ 96). Castillo was informed that to do so, she had to be connected to the U.S. Attorney's Office network, which she could access only through her work laptop. (*Id.*). It is unclear from Castillo's pleadings whether she filed a complaint with the Equal Employment Opportunity Office at this juncture.

Castillo had originally planned to return to work on May 2, 2022, but on April 14, asked to extend her leave for 25 more days, until May 27, 2022. (*Id.* ¶ 98, ¶ 99). Lewis denied the request and told Castillo that she could instead apply for leave without pay. (*Id.*). Castillo did so and was scheduled to return to work on May 17. (*Id.* ¶¶ 100, 102). Castillo also gave Lewis a letter from her doctor stating that it was medically necessary for Castillo to take the additional days of leave. (*Id.* ¶ 100). The letter also stated that Castillo should be able to return to work on May 16, 2022, barring further medical complications. (*Id.*).

Castillo alleges that on April 22, 2022, Lewis emailed her a Vacancy Announcement for an Administrative Services Specialist position. (*Id.* ¶ 101). Castillo interpreted this email as a constructive discharge that made her "feel devastated." (*Id.*). Castillo resigned on April 28, 2022, effective June 10, 2022. (*Id.* ¶ 103). When she submitted her resignation, Castillo also asked for information on how to request accommodations and asked for light duty for the rest of her employment. (*Id.* ¶ 103, ¶ 104).

On May 11, 2022, Castillo participated in an informal mediation and counseling session with the Equal Employment Opportunity Office. (*Id.* ¶ 106). At that meeting, Castillo rejected a settlement offer from the U.S. Attorney's Office. (*Id.*). Castillo alleges that she told the U.S. Attorney's Office that she would proceed with a formal complaint. (*Id.* ¶ 112).

Around May 12, Executive Assistant U.S. Attorney Krystal Walker asked Castillo for more information about her requested accommodations, including information on her medical condition and how it impacted her job functions. (*Id.* ¶¶ 109-111). After receiving the information from Castillo, Walker sent an email stating, "based on the medical questionnaire responses from your doctor, it does not appear that you are able to perform any critical performance element of your position." (*Id.* ¶ 112) (internal quotations omitted). Castillo agrees that she was unable to do the regular duties of the job, but asserts that she could work on one project at a time, without deadlines. (*Id.*). Castillo's request for light duty was denied on May 16, 2022. (*Id.* ¶ 113). Castillo then asked for leave without pay, which was approved. (*Id.* ¶ 115). Castillo also applied for "donations" of unused time off from the USABank program and Voluntary Leave Transfer Program, but the U.S. Attorney's Office did not help her apply for donated time. (*Id.* ¶ 116). Castillo alleges that Walker told her that only those undergoing a "medical emergency" qualified. (*Id.* ¶¶ 117-118).

5

On May 23, 2022, Castillo rescinded her resignation, which she had tendered on April 28, 2022, effective on June 10, 2022. (*Id.* ¶ 121). Two days later, she filed a formal complaint with the Equal Employment Opportunity Office. (*Id.* ¶ 122).

On May 31, 2022, Castillo and Walker discussed the possibility of Castillo taking one year of leave without pay. (*Id.* ¶ 123). Walker informed Castillo that her request for leave without pay was granted through June 10, 2022, but that her request for a full year of leave without pay was denied. (*Id.* ¶¶ 125-136). Walker then asked Castillo if she intended to apply for disability retirement. Castillo confirmed that she was. (*Id.*). On June 7, 2022, the U.S. Attorney's Office told Castillo that she had to return to work on June 13, 2022. (*Id.* ¶ 128). Castillo provided the U.S. Attorney's Office with a note from her doctor stating that she was unable to return to work on that date due to medical reasons. (*Id.* ¶ 129). When Castillo did not return to work on June 13, she was placed on absent-without-leave status. (*Id.* ¶ 131). Castillo alleges that her subsequent requests for information about her status were ignored. (*Id.* ¶¶ 132-133).

To stave off dismissal from the federal service, Castillo forwarded several letters from her doctors to Walker. (*Id.* ¶¶ 141, 143-144). On June 18, 2022, Castillo complained to Lewis about the delay in the processing of her "within grade increase," which was allegedly due on June 6, 2022. (*Id.* ¶ 138). Castillo does not allege whether she received this pay increase.

On September 1, 2022, Castillo received with a notice of proposed removal from federal service. (*Id.* ¶ 145). Castillo asked for a meeting with Executive Assistant United States Attorney Jennifer Lowery to request reconsideration of: (1) the denial of the requests for light duty and for leave without pay; and (2) the proposed removal based unexcused absences from work, which qualified as a removal on the basis of misconduct. (*Id*). Castillo asked that she be terminated based

6

on medical inability. (*Id*). Lowery upheld the removal, and Castillo was formally dismissed on October 28, 2022, due to absences without leave and excessive absences. (*Id.*).

Castillo had submitted a formal discrimination complaint with the U.S. Attorney's Equal Employment Opportunity Office in May 2022. (*Id.* ¶ 122). In February 2023, Castillo amended her complaint by emailing Equal Employment Opportunity Specialist Hilda Hudson (*Id.* ¶ 158). In June 2023, an Administrative Law Judge allowed Castillo to withdraw her hearing request and sent the case back to the Equal Employment Opportunity Office for a final agency decision. (*Id.* ¶ 160). In June 2024, Castillo appealed to the Office of Federal Operations. (*Id.* ¶ 161). In July 2024, the Equal Employment Opportunity Office of the U.S. Attorney's Office found that no discrimination had occurred. (*Id.* ¶ 170). Castillo's application for disability retirement was approved by the Office of Personnel Management. (*Id.* ¶ 177). In October 2024, Castillo filed this suit. (Docket Entry No. 1).

## II.     The Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard

is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks omitted, alterations adopted) (quoting *Twombly*, 550 U.S. at 558).

### III. Analysis

Castillo alleges that the following acts by the U.S. Attorney's Office support her claims of disability discrimination, a hostile work environment, and retaliation: (1) the delay in granting Castillo a reasonable accommodation in the form of FMLA leave between October 11, 2021, and January 19, 2022; (2) the denial of Castillo's request to use her government laptop while on leave on February 3, 2022; (3) the delay in processing Castillo's within-grade pay increase between June 6, 2022, and June 18, 2022; (4) the denial of Castillo's request for a reduced workload between May 16, 2022, and June 10, 2022; (5) the failure to assist Castillo with completing a Voluntary Leave Transfer Program form between May 2022 and June 2022; and (6) placing Castillo in absent without leave status on June 13, 2022. Each is examined below.

#### A. The Disability Discrimination Claims

##### a. The Alleged Delay in Granting FMLA Leave

The U.S. Attorney's Office argues that Castillo has failed to state a claim for failure to accommodate arising out of an alleged delay in granting her a reasonable accommodation in the

form of FMLA leave between October 11, 2021, and January 19, 2022. (Docket Entry No. 12 at 20). The U.S. Attorney's Office argues that Castillo has failed to allege that she submitted requests to use leave that were denied between October 11, 2021, and January 19, 2022; rather, she only submitted an FMLA medical provider certification form stating that she had a health condition and needed one to three days of leave per month. (*Id.*). The U.S. Attorney's Office argues that after receiving the certification form, management engaged in the "interactive process with Castillo" by asking her for medical documentation of her condition. (*Id.*). The U.S. Attorney's Office argues that Castillo did not submit a formal request for FMLA leave until January 19, 2022, when she asked for six to twelve weeks of leave beginning on February 4, 2022. (*Id.*). At that point, the U.S. Attorney's Office, acting through Lewis, again engaged in an "interactive process" with Castillo and asked her for additional medical documentation. (*Id.*). Once Castillo submitted those documents, the U.S. Attorney's Office approved Castillo's leave request by the end of that month. (*Id.*).

Castillo claims that the U.S. Attorney's Office's failure to give her information about the FMLA process when she first submitted her FMLA Medical Provider Certification form in October 2021 was an illegal delay in granting Castillo a reasonable accommodation. Her claim finds no support in the record or authorities. Disability discrimination under the Americans with Disabilities Act includes a failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A). Under the ADA, "[a] failure-to-accommodate claim requires a showing that: (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable

accommodations for such known limitations." *Weber v. BNSF Ry. Co.*, 989 F.3d 320, 323 (5th Cir. 2021) (quotation marks and quoting reference omitted). This same analysis applies under the Rehabilitation Act. *Frame v. City of Arlington*, 657 F.3d 215, 223-24 (5th Cir. 2011) (en banc) (Rehabilitation Act and Americans with Disabilities Act are generally interpreted in the same manner).

An employer is required to engage in an "interactive process" and have a "meaningful dialogue" to attempt to work out an accommodation for known disabilities. *E.E.O.C. v. Chevron Phillips Chem. Co.*, L.P., 570 F.3d 606, 621 (5th Cir. 2009) (quoting reference omitted). "When an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA." *EEOC v. Methodist Hosps. Of Dall.*, 62 F.4th 938, 948 (5th Cir. 2023) (citing *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999)). Castillo has not alleged facts that could show that the U.S. Attorney's Office was "unwilling" to engage in an interactive process on an accommodation for her disabilities. She alleges that Pascoe sent her a WH-380-E form after she indicated she would apply for FMLA leave, and that once she made a request for leave beginning on a specific date and for a set duration, the Office promptly approved the requested leave. The record does not show a failure to engage in the interactive process.

### b. The Denial of Request for Permission to Use Government Laptop While on Leave

The U.S. Attorney's Office argues that Castillo has failed to state a claim upon which relief can be granted by alleging that the U.S. Attorney's Office discriminated against her by withholding authorization for her to use her government work laptop while she was on leave. (Docket Entry No. 12 at 21). The U.S. Attorney's Office contends that denying permission to use her work laptop while on leave was not an adverse employment action because Castillo was not required to perform

10

any work duties while on leave. (Docket Entry No. 12 at 21). Castillo's response to the motion to dismiss argues that Pascoe denied her authorization to use her laptop while on leave to hinder her from filing an Equal Employment Opportunity Office complaint, which she could do only through her government-issued laptop. (Docket Entry No. 15 at 18).

Under 42 U.S.C. § 12112(a), an "adverse employment decision" may stem from decisions affecting "employee compensation, job training, and other terms, conditions, and privileges of employment." "A plaintiff must plead 'not only an adverse action, but something more than a *de minimis* harm borne of that action.'" *Id*. (citing *Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 431 (5th Cir. 2023)) (per curiam).

The court agrees that the U.S. Attorney's Office's withholding permission for Castillo to retain her government-issued laptop while she was on leave is not an adverse employment action for the purpose of her disability discrimination claim. Castillo has not alleged that she needed her government-issued laptop while on leave for work; she was not working. She alleges that she needed to use her government laptop to file an Equal Employment Opportunity Office complaint, but she also alleges that she was able to start this process by calling the Equal Employment Opportunity Office. (*See* Docket Entry No. 15 at 17-8). She alleges that the U.S. Attorney's Office issued her a token that enabled her to access the U.S. Attorney's Office's network during her leave, but she admits that she failed to pick up that token. Castillo has failed to allege facts that could show more than a *de minimis* harm resulting from the U.S. Attorney's Office withholding access to use her government-issued laptop while she was on leave from work.

### c. The Delay in Processing Plaintiff's Within-Grade-Increase

The U.S. Attorney's Office also argues that Castillo's allegations of a delay in processing her within-grade increase do not state a claim for disability discrimination. (Docket Entry No. 12

11

at 21-22). Castillo alleges that the within-grade increase should have been processed on June 6, 2022, but that it was not processed until Castillo "repeatedly requested" that she receive a copy. (Docket Entry No. 15 at 25). Castillo states that "without this [increase, she] could not prove that she had successfully completed her time in [her current] grade." (*Id.*). Castillo argues that the within-grade increase should have been quickly processed and that the delay is evidence of pretext. (*Id.*).

Castillo has failed to state a claim for disability discrimination on the basis of the alleged delay in processing her pay increase. Castillo does not dispute that the increase was effective as of June 6, 2022, which was the earliest date that she was entitled to receive it. Instead, Castillo claims only that she had to wait three weeks to receive confirmation that the increase had been processed. She has failed to allege facts showing more than a *de minimis* harm or an adverse employment action for the purpose of her disability discrimination claim.

### d. The Denial of Request for a "Reduced Workload"

Castillo alleges that on May 2, 2022, she requested a reasonable accommodation in the form of a reduced workload between May 16, 2022, and June 10, 2022. (Docket Entry No. 5 ¶ 104). She alleges that request was denied. (*Id.* ¶ 105). But the U.S. Attorney's Office argues that these allegations cannot form the basis of Castillo's failure to accommodate claim, because Castillo "was not a 'qualified individual' with a disability." The U.S. Attorney's Office argues that Castillo "admits that she could not perform the essential functions of her position." (Docket Entry No. 12 at 22). Castillo argues that the U.S. Attorney's Office mischaracterizes her allegations, and that when she asked for a reduced workload, she was capable of performing most, if not all, of her work duties. (Docket Entry No. 15 at 19).

Castillo's allegations fail to state a claim. Castillo alleges that when she requested a reduced workload, she was "able to perform one task or project at a time without hard deadlines." (Docket Entry No. 5 ¶ 112). In her response to the motion to dismiss, Castillo asserts that she told Walker that between May 16, 2022, and June 10, 2022, she could "support minor projects and tasks." (Docket Entry No. 15 at 21). Fifth Circuit precedent establishes that "[p]roviding a reasonable accommodation under the ADA does not require the employer to relieve the employee of any essential functions of the job [or] modify the actual duties." *Claiborne v. Recovery Sch. Dist.*, 690 Fed. Appx. 249, 254-55 (5th Cir. 2017) (citing *Barber v. Nabors Drilling U.S.A., Inc.*, 130 F.3d 702, 709 (5th Cir. 1997)). "Thus, a disabled employee cannot perform her job with reasonable accommodation if the only reasonable accommodation is for the employee not to perform the essential functions of her job." *Id.* Castillo's allegations show that her "reduced workload" request meant that she would work on only one task at a time, without hard deadlines. That was essentially a request to be relieved of the essential functions of her position, which is beyond what the U.S. Attorney's Office was required to do.

Under the ADA, "an employee has 'a right to [a] reasonable accommodation, not to the employee's preferred accommodation.'" *Brown v. San Antonio Food Bank*, 2024 WL 1300286, at *4 (5th Cir. Mar. 27, 2024) (citing *E.E.O.C. v. Agro Distrib., LLC*, 555 F.3d 462, 471 (5th Cir. 2009)). Castillo alleges that after denying her request for a reduced workload, the U.S. Attorney's Office instead approved her request for leave-without-pay status. In this circuit, "[t]ime off, whether paid or unpaid, can be a reasonable accommodation.…" *Austgen v. Allied Barton Sec. Servs.*, L.L.C., 815 F. App'x 772, 775 (5th Cir. 2020). Castillo's own allegations show that the U.S. Attorney's Office provided a reasonable accommodation, even if it was not Castillo's requested or preferred accommodation.

### e. Failure to Assist Plaintiff with Completing a Leave Program Form

The U.S. Attorney's Office asserts that it cannot be liable for a delay in responding to Castillo's requests for assistance in completing a form for the Voluntary Leave Transfer Program, because no authority or regulation requires the U.S. Attorney's Office to provide such assistance. (Docket Entry No. 12 at 23). The court agrees. Castillo does not allege that the U.S. Attorney's Office denied her application for the Voluntary Leave Transfer program, but only that Human Resources personnel in the U.S. Attorney's Office did not help her complete the form. That is insufficient to state a claim for disability discrimination.

### f. Placement in Absent Without Leave Status

The U.S. Attorney's Office argues that Castillo's allegations that she was placed on absent-without-leave status do not state a claim for disability discrimination. (Docket Entry No. 12 at 24). Castillo does not dispute that she was absent from work. She argues instead that the U.S. Attorney's Office should have removed her from employment based on her medical inability to perform her job, not based on her absent-without-leave status. (*See* Docket Entry No. 5 ¶ 148). When Castillo was placed on absent-without-leave status, she had requested, and received, numerous reasonable accommodations, even if not her preferred accommodations. At that point, by her own allegations, she as no longer a qualified individual who could perform the essential elements of her job. Castillo does not deny that she had run out of leave hours. The placement on absent-without-leave status does not give rise to a claim for disability discrimination.

### g. Castillo's Removal from Federal Service

In its reply to the motion to dismiss, the U.S. Attorney's Office concedes that Castillo's claims for disability discrimination and retaliation based on her removal from federal service should survive the motion to dismiss. (Docket Entry No. 20 at 1). These claims remain.

### B. The Retaliation Claim

Castillo also asserts a claim for retaliation related to her removal from the federal service, the denial of "reasonable accommodations," and her placement on AWOL status. As discussed above, the U.S. Attorney's Office does not seek dismissal of the retaliation claim based on the removal from federal service. However, the U.S. Attorney's Office argues that the allegations of the wrongful denial of reasonable accommodations and placement on absent-without-leave status cannot give rise to a retaliation claim, either because the alleged acts of discrimination either occurred before Castillo's first contact with the Equal Employment Opportunity Office on March 1, 2022; or, because the facts alleged fail to show an adverse employment action.

"To demonstrate unlawful retaliation, a plaintiff must make a prima facie case of (1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action." *Seaman v. CSPH*, 179 F.3d 297, 301 (5th Cir. 1999). Castillo engaged in a protected activity when she complained to the Equal Employment Opportunity Office. But Castillo first contacted that Office on March 1, 2022, and she officially filed a complaint on May 25, 2022. This was after the alleged delay in granting Castillo a reasonable accommodation in the form of FMLA leave between October 11, 2021, and January 19, 2022, and the denial of Castillo's request to use her government laptop while on leave on February 3, 2022. Because these incidents occurred before Castillo engaged in a protected activity, they cannot support a claim for retaliation.

The following events occurred after Castillo's initial contact with the Equal Employment Opportunity Office: (1) the delay in processing Castillo's within-grade pay increase between June 6, 2022 and June 18, 2022; (2) the denial of Castillo's request for a reduced workload between May 16, 2022 and June 10, 2022; (3) the failure to assist Castillo with completing a Voluntary

15

Leave Transfer Program form between May 2022 and June 2022; and (4) placing Castillo in absent-without-leave status on June 13, 2022. But, as discussed above, the delay in processing the within-grade increase and the failure to assist Castillo are not adverse employment actions under Fifth Circuit precedent. The denial of the request for a reduced workload and the placement in absent without leave status, after Castillo had already taken prolonged periods of leave and made clear that she could not perform the essential functions of her job, including adhering to deadlines, are not adverse employment actions. Castillo has failed to state a claim for retaliation.

Either the incidents she alleges occurred before March 1, 2022, or as discussed in the section on the discrimination claim, there was no adverse employment action. Except for Castillo's removal from federal service, she has failed to state a claim for retaliation.

### B. The Hostile Work Environment Claim

In the Fifth Circuit, "to establish a hostile work environment claim under the ADA, a plaintiff 'must show that: (1) he belongs to a protected group, (2) was subject to unwelcome harassment (3) based on his disability, (4) which affected a term, condition, or privilege of employment, and (5) [his employer] knew or should have known of the harassment and failed to take prompt, remedial action.'" *EEOC v. United States Drug Mart, Inc.*, 2024 U.S. App. LEXIS 384, at *3 (5th Cir. Jan. 5, 2024) (citing *Thompson v. Microsoft Corp.*, 2 F.4th 460, 470-71 (5th Cir. 2021)). "Where a harassment claim arises out of a supervisor's conduct," the fifth element disappears. *EEOC v. Boh Bros. Constr. Co.*, 731 F.3d 444, 453 (5th Cir. 2013) (en banc).

Castillo alleges that the U.S. Attorney's Office failed to grant her the accommodation she requested, while giving her an alternative accommodation; delayed in processing her within-grade increase, even though the delay had no effect on her pay or other term or condition of her employment; failed to help her complete a form, even though she was able to seek agency

16

assistance; and placed her on absent-without-leave status, after she had failed to return to work after using all her leave time. These allegations do not show that Castillo suffered harassment that was "sufficiently severe or pervasive to alter the conditions" of her employment. *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 771 (5th Cir. 2009).

To the extent that Castillo alleges that Pascoe, Walker, or another supervisor was unduly critical of her, that does not give rise to a claim for hostile work environment. "When the record demonstrates a legitimate concern regarding an employee's performance," as in this case, "'[c]riticism . . . and even threats of termination do not satisfy the standard for a harassment claim.'" *Willard v. Friendswood ISD*, 2019 WL 6790584, at *10 (S.D. Tex. Dec. 12, 2019) (citing *Credeur v. Louisiana*, 860 F.3d 785, 796 (5th Cir. 2017)). Castillo's hostile work environment claim is dismissed, with prejudice because amendment would be futile.

## IV. Conclusion

The court grants the motion to dismiss all the claims, with prejudice, except for the retaliation and disability discrimination claims that are based on Castillo's removal from federal service. The claims for retaliation and disability discrimination relating to Castillo's removal from federal service remain.

SIGNED on June 12, 2025, at Houston, Texas.

 _____
 Lee H. Rosenthal
 Senior United States District Judge